UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

**JENNIFER BARTIE o/b/o HER DECEASED SON JAVON KENNERSON**

        **Plaintiff,**

**VERSUS**

**LASALLE CORRECTIONS, L.L.C, LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, SECRETARY JAMES M. LEBLANC, CATAHOULA CORRECTIONAL CENTER, SHERIFF TONEY EDWARDS, SHERMAN FORD, JEREMY WILEY, BEN ADAMS, RANDY STOCKMAN, BLAKE LEBLANC, PAT BOOK, WARDEN SHERMAN FORD, WARDEN JEREMY WILEY, ASST. WARDEN ERIC STOTT, CLARA HODAS, LILLIE BROWN, ASHLI OLIVEAUX, SELENA HOLMES, JOHN DOE #1, JOHN DOE #2, JOHN DOE #3, JOHN DOE #4, JOHN DOE #5, JOHN DOE #6, JOHN DOE #7, JOHN DOE #8, JOHN DOE #9, JOHN DOE #10, ABC INSURANCE COMPANY, XYZ INSURANCE COMPANY, RST INSURANCE COMPANY.**

        **Defendants**

**CASE NO: 1:21-cv-4074**

**JURY TRIAL DEMANDED**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## <u>COMPLAINT</u>

NOW INTO COURT, through undersigned counsel, come the Plaintiff, Jennifer Bartie on behalf of her decease son Javon Kennerson, (hereinafter "Plaintiffs") who is domiciled and resides in Rapides Parish, respectfully represent the following:

**PARTIES**

1.

Jennifer Bartie is the mother of Javon Kennerson and is a person of full age of majority.

Made Defendants herein are the following:

a) CATAHOULA CORRECTIONAL CENTER ("C.C.C."), a private prison facility in Harrisonburg, Catahoula Parish, owned and operated by private company LASALLE CORRECTIONS through contracts with the LOUISIANA DEPARTMENT OF CORRECTIONS. This private prison is obliged to ensure the medical and mental health of inmates in the custody of the Louisiana Department of Corrections that are housed there.

b) Defendant James M. LeBlanc is the Secretary of Louisiana's Department of Public Safety and Corrections ("DOC"). In his capacity as Secretary, he is responsible for the functioning and control of all programs within the Department. He formulates rules and regulations and determines policy regarding management, personnel, and total operations. He leads and supports central office and field unit staffs, which are charged with carrying out the work of the agency. By law, he is responsible for protecting the constitutional rights of all persons held in the DOC's custody. At all relevant times, LeBlanc was acting under color of law and as the agent and official representative of DOC. He can be served at 504 Mayflower Street, Baton Rouge, LA 70802.

c) LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS ("DOC"), a governmental entity and department of the State of Louisiana, who was at all relevant times was responsible for health, safety, and well-being of Javon Kennerson, an inmate committed to DOC's custody. The DOC is the recipient of federal funds. The DOC can be served at 504 Mayflower Street, Baton Rouge, LA 70802.

d) LASALLE CORRECTIONS, LLC is a Louisiana Corporation that has its principal place of business in Ruston, Louisiana. LASALLE CORRECTIONS maintains an office in Ruston, Louisiana and operates nine (9) correctional facilities in Louisiana, as well as others in Texas, New Mexico, and Georgia. LASALLE CORRECTIONS' registered agent in Louisiana is William K. McConnell at 192 Bastille Lane, Suite 200, Ruston, LA 71270.

e) ABC Insurance Company is an insurance company authorized to do, and doing business in the State of Louisiana providing general liability coverage for Catahoula Correctional Center and/or Lasalle Corrections, LLC.

f) XYZ Insurance Company is an insurance company authorized to do, and doing business in the State of Louisiana providing general liability coverage for Louisiana Department of Corrections.

g) SHERIFF TONEY EDWARDS was at all times relevant to this complaint the Sheriff of Catahoula Parish, a person of full age of majority domiciled in Catahoula Parish. Through contractual relationships with Defendants DOC and Lasalle Corrections, Sheriff Edwards had responsibility in overseeing and ensuring the health of inmates at C.C.C. He is sued in his official capacity;

h) RST Insurance Company is an insurance company authorized to do, and doing business in the State of Louisiana providing general liability coverage for Catahoula Parish Sheriff and his employees.

i)   SHERMAN FORD, was at all times relevant to this complaint the Warden of C.C.C., a person of full age of majority and a resident of Louisiana. He is being sued in his individual and official capacities;

j)   JEREMY WILEY, was at all times relevant to this complaint the also a Warden of C.C.C., and is, upon information and belief, a person of full age and of majority, domiciled in Louisiana. He is sued in his official and individual capacities;

k)   ERIC STOTT, was at all times relevant to this complaint the Assistant Warden of C.C.C., a person of full age of majority and a resident of Louisiana. He is being sued in his individual and official capacities;

l)   BEN ADAMS, was at all times relevant to this complaint the Chief Operation Officer at C.C.C., and is, upon information and belief, a person of full age and of majority, domiciled in Louisiana. He is sued in his official and individual capacities;

m)   RANDY STOCKMAN, was at all times relevant to this complaint the Captain of Patrol at C.C.C., and is, upon information and belief, a person of full age and of majority, domiciled in Louisiana. He is sued in his official and individual capacities;

n)   PAT BOOK, was at all times relevant to this complaint the Chief Warden of C.C.C. for Lasalle Corrections, and is upon information and belief, a person of full age and majority, domiciled in Louisiana. He is sued in his individual and official capacities.

o)   BLAKE LEBLANC, was at all relevant times to this complaint worked for the D.O.C. in charge of overseeing mental health issues with inmates throughout the DOC system. He is upon information and belief, a person of full age and majority, domiciled in Louisiana. He is sued in his individual and official capacities.

p)   ASHLI OLIVEAUX was at all relevant times employed at DOC Headquarters to make assess the proper placement of inmates in DOC Custody based on their health and mental health needs to ensure their safety. She is upon information and belief, a person of full age and majority, domiciled in Louisiana. She is sued in his individual and official capacities.

q)   SELENA HOLMES was at all relevant times to this complaint worked for the D.O.C. in charge of overseeing mental health issues with inmates throughout the DOC system. She is upon information and belief, a person of full age and majority, domiciled in Louisiana. She is sued in his individual and official capacities.

r)   CLARA HODAS, was at all relevant times a mental health administrator at DOC who was in touch with or had knowledge of C.C.C.'s warnings of Mr. Patterson's deteriorating physical and mental health. She is upon information and belief, a person of full age and majority, domiciled in Louisiana. She is sued in his individual and official capacities.

s)   LILLIE BROWN, was at all relevant times a mental health supervisor at DOC who was in touch with or had knowledge of C.C.C.'s warnings of Mr. Patterson's deteriorating physical and mental health. She is upon information and belief, a person of full age and majority, domiciled in Louisiana. She is sued in his individual and official capacities.

t) JOHN DOES #1-5, were, at all times relevant to this complaint, employees at C.C.C. or Lasalle Corrections assignedto the tier housing Mr. Kennerson, and are, upon information and belief, persons of full ageand of majority, domiciled in Louisiana. They are sued in their individual capacity;

u) JOHN DOE #6-10, were at all times relevant to this complaint responsible for medical and mental health care provider employed to provide medical and mental health treatment and care to C.C.C. inmates, including Mr. Kennerson during his incarceration and prior to his death;

v) At all times relevant to this complaint, all defendants acted in concert and conspiracy and were jointly and severally responsible for the harms caused to plaintiff.

w) At all times to this Complaint, all defendants acted under the color of state law.

x) THIS PETITION PUTS ON NOTICE ANY EXCESS POLICY COVERING, THE CATAHOULA PARISH'S SHERIFF'S OFFICE, SHERIFF EDWARDS, ANY EMPLOYEE OF THE CATAHOULA CATAHOULA CORRECTIONAL CENTER, THE LOUISIANA DEPARTMENT OF CORRECTIONS AND ALL ITS EMPLOYEES, AND LASALLE CORRECTIONS AND ALL OF ITS EMPLOYEES AND ANY POTENTIAL UNION POLICY COVERING THE INDIVIDUAL SHERIFF DUPUTIES NAMED INDIVIDUALLY IN THIS SUIT.

## JURISDICTION AND VENUE

2.

The United States District Court has jurisdiction over the subject matter of this complaint under 42 U.S.C. 1983 and 28 U.S.C. 1331, 1343(a)(3), and 1367(a).

3.

The Western District of Louisiana is the appropriate venue to bring this complaint, because the facts that give rise to Plaintiffs' claims all took place within the Western District of Louisiana.

## FACTUAL ALLEGATIONS

4.

In 2013, Mr. Kennerson was convicted of an offense for which he was sentenced to the custody of the DOC for twenty (20) years. Mr. Kennerson was remanded to DOC custody in or around 2013.

4

5.

From the time Mr. Kennerson was remanded to DOC custody in 2013 through his death on December 12, 2020, he remained in DOC custody. During this entire period, DOC was fully responsible to ensure Mr. Kennerson's health and provide proper health care, as well as prevent self-harm.

6.

Defendant James Leblanc is the DOC's Secretary, thus making him responsible for the functioning and control of all programs within the Department. He formulates rules and regulations and determines policy regarding management, personnel, and total operations. He leads and supports central office and field unit staffs, which are charged with carrying out the work of the agency. By law, he is responsible for protecting the constitutional rights of all persons held in the DOC's custody. At all relevant times, LeBlanc was acting under color of law

7.

Prior to Mr. Patterson's incarceration, he suffered none of the psychotic or mental illness symptoms that he manifested in his last weeks of life while in D.O.C. Custody, including at C.C.C. Nor did he suffer any of the physical maladies that killed him on December 12, 2020 while in DOC custody.

8.

C.C.C. is a private prison run by the company Lasalle Corrections via contract with D.O.C. While Lasalle operates this facility, both it and D.O.C. are fully and individually responsible for the health, including mental health of the inmates in custody at C.C.C. As shown below, when Lasalle has issues with their inmates they regularly consult with D.O.C. for direction and instruction. C.C.C. is overseen by Defendant Sheriff Toney Edwards, Warden Sherman Ford, Warden Jeremy Wiley. Assistant Warden Eric Stott, Chief Operation Office Ben Adams, Captain of Patrol Randy Stockman,

and Chief Warden employed by Lasalle Pat Book. Upon information and belief, a number of the individuals above including Sheriff Edwards and other defendants listed but yet to be identified by Plaintiffs were employed by the Catahoula Parish Sheriff's Office and worked at C.C.C.

9.

Prior to Mr. Patterson's death, D.O.C. was aware of the issues at Lasalle facilities involving inmates' health and Lasalle failing to provide adequate care. For example, Lasalle settled for $405,000 with a former prison at Jackson Parish Correctional Center due to a fall that left him severely injured, and Lasalle afterwards denied that inmate physical therapy. The plaintiff there frequently had to drag himself across jail floors because Lasalle employees refused to give him a wheelchair. Another inmate's family sued for wrongful death for an inmate who suffered an asthma attack at the Lasalle-run Madison Parish Correctional Center. This inmate was denied treatment or resuscitation attempts for over an hour causing this inmate to needlessly perish. Indeed, in one of its private facilities in Texarkana, an employee pled guilty to manslaughter after actively choosing to refuse a prisoner medical care.

10.

Upon information and belief, DOC and Defendant James LeBlanc were aware of these lawsuits but took no actions to terminate its contract with Lasalle, provide more intensive oversight over Lasalle's privately run prisons, nor make any extra accommodations for those sick or mentally ill inmates house at Lasalle facilities in violation of constitutional law, the Americans with Disabilities Act ("ADA"), or state law.

11.

On November 17, 2020, Mr. Javon Kennerson was transferred from C. Paul Phelps Correctional Center ("P.P.C.C.") run by the Louisiana Department of Corrections ("DOC") to the Catahoula Parish Prison ("C.P.P.").

12.

Prior to becoming sick, Mr. Knnerson was routinely in touch with family. Their discussions included his medical well-being. He never once experienced any of the symptoms he began displaying at C.C.C. that ultimately caused his death.

13.

Upon arrival at C.C.C., notes from C.C.C. on November 18, 2020 reflect Mr. Paatterson, shaking bars and ignoring verbal orders, which resulted in John Doe #1 spraying Mr. Kennerson in face with a chemical. Mr. Patterson was later sprayed again with chemicals by either John Doe #1 or John Doe #2. Mr. Patterson was placed in a restraining chair and forced to shower.

14.

On November 20, 2020, C.C.C. contacted Defendant D.O.C. employees (listed below) about Mr. Patterson's condition, indicating he had a mental health issue. Mr. Patterson kept ripping off his clothes and running around, painted his cell with water, and defecated in his food tray. D.O.C. took no action despite this plainly bizarre behavior. C.C.C. and its employees too no sufficient action despite this behavior to ensure Mr. Paatteron's safety. The persons contacted at D.O.C. about Mr. Patterson's health were Ashli Oliveaux, head of placement of inmates, Selena Holmes, charged with overseeing mental health issues with inmates, Clara Hodas, Mental health supervisor, Lillie Broan, mental health supervisor, and Blake Leblamc, in charge of overseeing mental health issues with inmates.

15.

On November 23, 2020, C.C.C. again contact D.O.C., this time speaking with Defendant Clara Hodas a Mental Health Administrator. C.C.C. stated it was worried that Mr. Paatterson would hurt himself or others. Ms. Hodas said she would talk to Defendant Blake Leblanc about potentially

transferring Mr. Patterson. D.O.C. took no adequate action despite this plainly bizarre behavior. C.C.C. and its employees too no sufficient action despite this behavior to ensure Mr. Patteron's safety.

16.

Despite all the symptoms he was displaying, upon information and belief, until November 25, 2020, Mr. Kennerson was not placed on suicide watch or any other similar isolation cell.

16.

Despite Mr. Patterson's plainly psychotic and dangerous behavior, neither D.O.C. nor C.C.C. even had him meet with a psychiatrist until November 25, 2020. At that time, Mr. Patterson was placed on suicide risk. He was noted to be throwing feces and largely unable to complete a physical exam. Upon information and belief, up to this point, Mr. Kennerson had received no other medical care and no medications.

17.

With this lack of adequate medical care from D.O.C. the date of his booking into C.C.C.— as well as C.C.C.'s inadequate medical care itself, it appears Mr. Patteron's health took a nosedive. There are no notes from C.C.C. from November 25, 2020 until December 2, 2020. At this point, Mr. Kennerson is in a wheelchair, lethargic, with a low temperature and blood pressure. At this time Mr. Patterson was taken to Riverland Medical ER. He was supposed to see a neurologist within 24 hours, as well have a WBC and BMP repeated in that same time.

18.

Communication with D.O.C. attempted to resume on December 2. There are notes of Defendants Hodas and Oliveaux not answer their phone.

19.

On approximately December 2, CPP notified Mr. Patterson's mother of psychotic

symptoms Mr. Kennerson was experiencing including eating his feces, acute. Mr. Kennerson had no history of mental health issues, nor manifested any sort of similar behaviors during any period of incarceration.

20.

On December 2, 2020 Mr. Kennerson was finally taken to the Riverland Medical Center. He was found to have altered mental status, hypernatremia, abnormal metabolic blood panel levels, scalp laceration, infected wounds and rhadomyolysis. The lacerations to his head were noted by guards to be caused when Mr. Patterson ran into his cell door. These lacerations were draining puss and had a foul odor.

21.

C.C.C. returned Mr. Patterson to the prison and sought no other emergent medical care on December 2, 2020. Upon information and belief, no member of D.O.C. responded to C.C.C. about Mr. Patterson's condition.

22.

C.C.C. took Mr. Patterson back to Riverland Medical Center on December 3 where he remained until December 4. Mr. Patterson was intubated and noted to again to have an altered mental status.

23.

Finally on December 3, Defendant Oliveaux and Defendant Blaake Leblanc returned C.C.C.'s calls regarding Mr. Patterson.

24.

On December 4, 2020, Mr. Patterson was transferred to Lakeview Regional Medical Center. There it is again noted in his history he acted increasingly psychotic, including eating his own feces and drinking his own urine.

25.

A mere *five days* before being admitted at Lakeview—which would be November 30, 2020, many days after his transfer to C.C.C.—medical records on December 4 say that Mr. Patterson was given access to roach killer which he smoked. In other words, after being transferred on November 18, 2020 and engaging in self-harm, ramming his head in his wall, acting psychotic, eating feces and drinking urine, Mr. Patterson in his altered mind state was still under such poor care and supervision that he was permitted to smoke insecticide.

26.

Eight (8) days later, on December 12, 2020, Mr. Patterson died. The coroner believed his death was attributable to the insecticide he was able to smoke on November 30, 2020.

27.

Defendants John Does #1-#10, Ben Adams, Randy Stockman as the result of *de facto* policies and practices permitted by defendants C.C.C., D.O.C. James LeBlanc, Lasalle Corrections, Sheriff Edwards, Warden Ford, Warden Wiley, Assistant Warden Stott, Pat Book, Ashli Oliveaux, Selena Holmes, Clara Hodas, and Lillie Brown failed to monitor prisoner living areas including where Mr. Patterson was housed despite his overt manifestations of psychosis and mental illness.

28.

Defendants John Does #1-#10, Ben Adams, Randy Stockman, as the result of *de facto* policies and practices permitted by Defendants C.C.C., D.O.C. James LeBlanc, Lasalle Corrections, Sheriff Edwards, Warden Ford, Warden Wiley, Assistant Warden Stott, Pat Book, Ashli Oliveaux, Selena Holmes, Clara Hodas, and Lillie Brown failed to provide Mr. Patterson sufficient access to qualified medical and mental health care.

29.

Defendants John Does #1-#10, Ben Adams, Randy Stockman, as the result of *de facto* policies and practices permitted by defendants C.C.C., D.O.C. James LeBlanc, Lasalle Corrections, Sheriff Edwards, Warden Ford, Warden Wiley, Assistant Warden Stott, Pat Book, Ashli Oliveaux, Selena Holmes, Clara Hodas, and Lillie Brown failed to provide Mr. Patterson sufficient medical and mental health care prior to, and resulting in, his death.

30.

C.C.C., D.O.C. James LeBlanc, Lasalle Corrections, Sheriff Edwards, Warden Ford, Warden Wiley, Assistant Warden Stott, Pat Book, Ashli Oliveaux, Selena Holmes, Clara Hodas, and Lillie Brown failed to adequately staff and train employees responsible for providing constitutionally adequate medical and mental health care at C.C.C. As a result of *de facto* policies and practices permitted by Defendants C.C.C., D.O.C. James LeBlanc, Lasalle Corrections, Sheriff Edwards, Warden Ford, Warden Wiley, Assistant Warden Stott, Pat Book, Ashli Oliveaux, Selena Holmes, Clara Hodas, and Lillie Brown, C.C.C. employees are not trained and/or supervised to address and refer prisoners' serious mental health care needs to Lasalle Corrections and D.O.C., including those exhibited by Mr. Patterson, resulting in deliberate indifference to prisoners' serious mental healthcare needs.

31.

Defendants John Does #1-#10, Ben Adams, Randy Stockman, as the result of *de facto* policies and practices permitted by defendants Defendants C.C.C., D.O.C. James LeBlanc, Lasalle Corrections, Sheriff Edwards, Warden Ford, Warden Wiley, Assistant Warden Stott, Pat Book, Ashli Oliveaux, Selena Holmes, Clara Hodas, and Lillie Brown failed to provide appropriate care when he/she did not place Mr. Patterson in safe housing away from any poisonous agents, as several staff members had knowledge of his dangerous and fragile mental state and/or had witnessed bizarre and alarming behavior by Mr. Patterson.

32.

. Defendants John Does #1-#10, Ben Adams, Randy Stockman, as the result of *de facto* policies and practices permitted by defendants Defendants C.C.C., D.O.C. James LeBlanc, Lasalle Corrections, Sheriff Edwards, Warden Ford, Warden Wiley, Assistant Warden Stott, Pat Book, Ashli Oliveaux, Selena Holmes, Clara Hodas, and Lillie Brown violated Mr. Patterson's rights as a mentally ill individual under the A.D.A., as D.O.C. received federal funds.

33.

At all times relevant to this complaint, defendants acted under color of state law.

34.

At all times mentioned herein, all the defendants named in their individual capacities were employed by the defendants, D.O.C., Lasalle Corrections, or Catahoula Parish Sheriff's Office and were acting in the course and scope of their employment with defendants D.O.C., Lasalle Corrections, or the Catahoula Parish Sheriff's Office.

35.

The defendants' actions were reckless, willful, wanton, and malicious, and constituted deliberate indifference to the rights of the plaintiffs. The defendants' actions were the proximate cause of the injuries and death of Mr. Patterson's and the damages of the plaintiffs.

## CAUSES OF ACTION

**COUNT 1 – § 1983 Violation Based on Establishment of a System in which Prisoners with Serious Mental Health Issues are Denied Access to Appropriate Medical Care — Defendants C.C.C., D.O.C. James LeBlanc, Lasalle Corrections, Sheriff Edwards, Warden Ford, Warden Wiley, Assistant Warden Stott, Pat Book, Ashli Oliveaux, Selena Holmes, Clara Hodas, and Lillie Brown (Official Capacities)**

36.

The defendants named in this Count, acting individually and together, under color of law,

violated Mr. Patterson's right to be free from cruel and unusual punishment and the right to due process and equal protection of the laws as protected by the Fourteenth Amendments of the United States Constitution and 42 USC § 1983. They did so by providing inadequate and insufficient services for medical and mental health care that they knew would result in the deprivation of adequate medical and mental health care for prisoners with serious medical conditions, namely, serious mental health conditions. Plaintiffs were individually harmed by the insufficiency of the contract and the failure to make other accommodations to provide mental health services because they resulted in the death of Mr. Patterson, who was deprived of appropriate mental health and medical treatment after he was booked into C.C.C., which deprivation resulted in his death, as described above.

37.

At all pertinent times, the defendants named in this Count, individually and collectively, acted unreasonably, recklessly, and with deliberate indifference and disregard for the safety, constitutional, and civil rights of Mr. Patterson by failing to provide appropriate medical and mental health services.

**COUNT 2 – § 1983 Violation Based on Failure to Supervise Other Defendants to Ensure Inmates Received Appropriate Care for Serious Medical Needs— Defendants C.C.C., D.O.C. James LeBlanc, Lasalle Corrections, Sheriff Edwards, Warden Ford, Warden Wiley, Assistant Warden Stott, Pat Book, Ashli Oliveaux, Selena Holmes, Clara Hodas, and Lillie Brown (Individual and Official Capacities)**

38.

Defendants C.C.C., D.O.C. James LeBlanc, Lasalle Corrections, Sheriff Edwards, Warden Ford, Warden Wiley, Assistant Warden Stott, Pat Book, Ashli Oliveaux, Selena Holmes, Clara Hodas, and Lillie Brown in their individual and official capacities, failed to supervise their subordinates, namely, Defendants John Does #1-#10, Ben Adams, Randy Stockman, Warden Ford, Warden Wiley, Assistant Warden Stott, Pat Book, Ashli Oliveaux, Selena Holmes, Clara Hodas,

and Lillie Brown to ensure that these subordinates did not ignore prisoners' obvious signs of medical and/or mental health distress, and/or fail to properly monitor prisoners showing signs of mental health crisis.

39.

The plaintiffs were directly harmed by this failure to supervise because it caused the death of Mr. Patterson, who received patently insufficient treatment for his serious mental health needs from the specified defendants. At all pertinent times herein, Defendants C.C.C., D.O.C. James LeBlanc, Lasalle Corrections, Sheriff Edwards, Warden Ford, Warden Wiley, Assistant Warden Stott, Pat Book, Ashli Oliveaux, Selena Holmes, Clara Hodas, and Lillie Brown were aware of the need to supervise their subordinates in order to ensure that they did notviolate prisoners' rights. These defendants ignored that need and acted unreasonably and with deliberate indifference and disregard for the safety of Mr. Patterson, as described above.

40.

Defendants C.C.C., D.O.C. James LeBlanc, Lasalle Corrections, Sheriff Edwards, Warden Ford, Warden Wiley, Assistant Warden Stott, Pat Book, Ashli Oliveaux, Selena Holmes, Clara Hodas, and Lillie Brown, in their individual and official capacities, failed to supervise their subordinates, namely Defendants John Does #1-#10, Ben Adams, Randy Stockman, Warden Ford, Warden Wiley, Assistant Warden Stott, Pat Book, Ashli Oliveaux, Selena Holmes, Clara Hodas, and Lillie Brown, to ensure that these subordinates did not ignore prisoners' obvious signs of medical and/ormental health distress, and/or fail to properly monitor prisoners show signs of mental health crisis.They also failed to ensure that their subordinates provided reasonable and sufficient treatment forprisoners' mental health conditions and properly monitored prisoners who were being treated. Theplaintiffs were directly harmed by this failure to supervise because it caused the death of Mr. Paatterson, who received patently insufficient treatment for his serious mental health needs

from the specified defendants.

41.

At all pertinent times herein, Defendants C.C.C., D.O.C. James LeBlanc, Lasalle Corrections, Sheriff Edwards, Warden Ford, Warden Wiley, Assistant Warden Stott, Pat Book, Ashli Oliveaux, Selena Holmes, Clara Hodas, and Lillie Brown were aware of the need to supervise their subordinates in order to ensure that they did not violate prisoners' rights. They ignored that need and acted unreasonably and with deliberate indifference and disregard for the safety of Mr. Patterson, as described above.

### COUNT 3 – § 1983 Violation Based on Deliberate Indifference to Mr. Patterson's Constitutional Right to Appropriate Medical and Mental Health Care
**Defendants C.C.C., D.O.C. James LeBlanc, Lasalle Corrections, Sheriff Edwards, Warden Ford, Warden Wiley, Assistant Warden Stott, Pat Book, Ashli Oliveaux, Selena Holmes, Clara Hodas, Lillie Brown, John Does #1-#10, Ben Adams, Randy Stockman**
**(Individual Capacities)**

42.

The above-named defendants, acting individually and together, and under color of law, engaged in a course of conduct and conspired to engage in a course of conduct that acted to deprive Mr. Patterson of his constitutional rights and did deprive him of said rights, specifically, the right to reasonable and adequate medical and mental health care.

43.

At all times pertinent herein, these defendants, acting individually and collectively, acted unreasonably, recklessly, maliciously, and/or with deliberate indifference and disregard for the constitutional and civil rights and life and serious mental health needs of the deceased, Mr. Patterson.

44.

Furthermore, these defendants, individually and collectively, had the duty and ability to

intervene to prevent the violations of the rights of Mr. Patterson, as described herein, but failed to do so.

45.

Finally, these Defendants acted as a final policy maker when they placed a psychotic Mr. Patterson in a cell with access to fatal insecticide to ingest, and deprived Mr. Paatterson of reasonable and adequate mental health care, having been delegated the authority to do so by Defendants D.O.C, James LeBlanc, C.C.C. and Lasalle Correction .

**COUNT 4 – *Monell* Violation of § 1983 Based on Establishment of Policies, Patterns or Practices pursuant to which Prisoners with Serious Mental Health Conditions are Denied Access to Appropriate Medical Care— Defendants D.O.C., James LeBlanc, Sheriff Edwards, C.C.C., and Lasalle Corrections (Official Capacities)**

46.

The defendants named in this Count, D.O.C., James LeBlanc, Sheriff Edwards, C.C.C., and Lasalle Corrections acting individually and together, under color of law, acted to violate Mr. Claiborne's right to be free fromcruel and unusual punishment and the right to due process and equal protection of the laws as protected by the Fourteenth Amendments of the United States Constitution and 42 USC § 1983. They did so by establishing and maintaining policies, patterns or practices that they knew would deprive prisoners with serious medical conditions, namely, serious mental health disorders, of treatment for those disorders.

47.

Mr. Patterson and the plaintiffs were individually harmed by these policies, patterns, or practices because they resulted in the death of Mr. Patterson, who was deprived of appropriate medical and mental health treatment after he was booked into the C.C.C. despite the obvious, acute, and severe emotional and mental distress he was suffering.These deprivations resulted in his death, as described above.

48.

At all pertinent times, the defendants named in this Count, individually and collectively, acted unreasonably, recklessly, and with deliberate indifference and disregard for the safety, constitutional, and civil rights of the plaintiffs by establishing the above-described policies, patterns, or practices. The defendants named in this count further failed to take reasonable steps to prevent the deaths of inmates in their care, including Mr. Patterson.

49.

The above-named defendants are therefore liable to the plaintiffs for the violation of constitutional rights described above pursuant to *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978).

**COUNT 5– State Claim of Negligent and/or Intentional Conduct Resulting in Injury and Death— Defendants Defendants John Does #1-#10, Ben Adams, Randy Stockman, Warden Ford, Warden Wiley, Assistant Warden Stott, Pat Book, Ashli Oliveaux, Selena Holmes, Clara Hodas, and Lillie Brown (Individual Capacities)**

50.

The above-named defendants, acting individually and together, and under color of law, engaged in a course of conduct that deprived Mr. Patterson of appropriate mental health treatment, causing harm to Mr. Patterson and ultimately led to his death. At all times pertinent herein, these defendants, individually and collectively, acted intentionally, maliciously, recklessly, and/or negligently towards the deceased, Mr. Patterson. Furthermore, these defendants, individually and collectively, had the duty and ability to intervene upon observing and/or being made aware of Mr. Patterson peculiar behavior but failed to do so.

**COUNT 6 – State Claim of Respondeat Superior Liability of Defendants D.O.C., C.C.C., Sheriff Toney Edwards, Lasalle Corrections Under La. C. C. art. 2320**

51.

At all relevant times, the individually named defendants were acting in the course and scope

of their employment with Defendants D.O.C., C.C.C., Sheriff Toney Edwards and Lasalle Corrections are therefore liable under the doctrine of respondeat superior, La. C. C. 2320, for all state law causes of action and liability arising due to the actions and inactions of the individual defendants, as described herein.

### COUNT 7 – Loss of Consortium ALL DEFENDANTS

52.

Defendants are liable to Jennifer Bartie, pursuant to La. C.C. art. 2315(B) and 42 U.S.C. § 1983 for loss of service, society, support, love and affection arising out of the injuries occasioned by the acts and/or omissions of the Defendants herein.

### COUNT 8 – Wrongful Death Claim of Jennifer Bartie

53.

Jennifer Bartie is the the surviving mother of Mr. Patterson, who seeks to recover for the damages she sustained as a result of the death of her son due to the fault of Defendants.

54.

The deceased left no surviving wife or children.

### COUNT 9 – Survival Action Claim of Jennifer Bartie

55.

Jennifer Bartie seeks relief under La. C.C. art 2315.2, for the pain and suffering occurring before and during Mr. Paatterson death occasioned by the intentional and/or grossly negligent acts and/or omissions of the Defendants herein, and forall other relief as set forth herein.

### COUNT 10 – State Claim of Direct Action Against an Insurer, Pursuant to LA R.S. § 22:1269

56.

At all applicable times, Defendant ABC Insurance Company, XYZ Insurance Company,

and RST Insurance Company afforded liability insurance coverage to defendants. Accordingly, ABC Insurance Company is liable to the plaintiffs for the intentional and/or negligent acts of the other defendants.

### COUNT 11 – State Claim for Breach of Duty to Provide Medical Treatment— D.O.C. and Lasalle Corrections

57.

Under Louisiana law, D.O.C. as the confining authority, has a legal duty toprovide appropriate medical and mental health treatment for prisoners.

58.

For the facility C.C.C., D.O.C. contracted with Lasalle Corrections to provide such medical and mental health treatment.

59.

D.O.C. and Lasalle Corrections failed to provide medical and mental health treatment within C.C.C. that was adequate and reasonable as required by law.

60.

Mr. Patterson's death was a direct result of D.O.C. and Lasalle Corrections failure to provide adequate and reasonable mental health care.

### COUNT 12- Failure to Protect Under State Law— All Defendants

61.

Under La. C.C. Art. 2315, Defendants are also liable to Plaintiffs under state law. The defendants had a duty to protect Mr.Patterson. His mental health issues were very pronounced and known to all defendants. Nevertheless, they provided him with constitutionally inadequate mental health and medical treatment. Further, they placed him in a cell where he had access to poison he ingested. The D.O.C., C.C.C., Sheriff Edwards, and Lasalle Corrections are vicariously liable for

the state law delicts of his servants.

### COUNT 13 – VIOLATION OF THE ADA
**Defendants C.C.C., D.O.C. James LeBlanc, Lasalle Corrections, Sheriff Edwards, Warden Ford, Warden Wiley, Assistant Warden Stott, Pat Book, Ashli Oliveaux, Selena Holmes, Clara Hodas, and Lillie Brown**

62.

D.O.C. receives federal funding and is thus required to comply with the A.D.A. Law defines a defines "a qualified individual with a disability" as a person who suffers from a "physical or mental impairment that substantially limits one or more major life activities," including but not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(1)(A), (2)(A).

63.

Under the ADA, Defendant DOC must provide prisoners with disabilities reasonable accommodations and modifications so that they can avail themselves of and participate in all programs and activities offered by Defendants. Here, Defendants failed to "implement reasonable policies, including physical modifications to additional cells in accordance with the 2010 [accessibility] Standards, so as to ensure that each inmate with a disability is housed in a cell with the accessible elements necessary to afford the inmate access to safe, appropriate housing," 28 C.F.R. § 35.152(b)(3). Defendants also failed or refused to provide Plaintiffs and the Disability Subclass they represent with reasonable accommodations and other services related to their disabilities, see generally 28 C.F.R. § 35.130(a). Finally, Defendants failed to to "ensure that inmates or detainees with disabilities are housed in the most integrated setting appropriate to the needs of the individuals," 28 C.F.R. § 35.152(b)(2).

64.

Here, Mr. Patterson's mental illness constituted a "qualified individual." However,

defendants did not provide proper accommodations, medical and mental health treatment, and safe housing despite his condition.

## INJURIES

74.

As a result of the actions of the defendants as described above, damages have been incurred as follows: Mr. Patterson (deceased) suffered conscious and severe physical, mental, and emotional distress, pain and suffering prior to his death, and lost his life. Jennifer Bartie suffered emotional pain and suffering, past, present, and future; and have suffered the loss of love, affection, and companionship of her son, and has incurred funeral and burial expenses.

## PRAYER FOR RELIEF

75.

WHEREFORE, plaintiffs pray that after due proceedings there be judgment rendered herein in plaintiffs' favor and against all defendants individually and jointly, as follows:

a) Compensatory and punitive damages as prayed for herein;

b) Reasonable attorneys' fees, as provided in 42 U.S.C. § 1988, 42 U.S.C. § 12205, and 29 U.S.C. § 794(b) and all costs of these proceedings and legal interest;

c) Punitive damages pursuant to 42 U.S.C. § 1983 and any other applicable statute;

d) Relief under La. C.C. arts. 2315 and 2321 from the intentional and/or negligent acts and/or omissions of the Defendants herein; and

e) All other relief as appears just and proper to this Honorable Court.

*Christopher J. Murell*
Christopher J. Murell (#32075)   _____
MURELL LAW FIRM
2831 St. Claude Ave.
New Orleans, LA 70117
(504) 717-1297 (P)
chris@murell.law

AND

*Verity Gentry*
Verity Gentry (#33143)
Law Office of Verity Gentry
1532 Irving Place
Shreveport, LA 71101
(318) 701.8127
verity@vgblaw.com

ATTORNEYS FOR PLAINTIFFS